Charles E. STEMLER, Plaintiff,

v.

WENHAM TRANSPORTATION, INC., and Billy Dean Bell and Robert L. Cook, Defendants.

Civ. A. No. 62–446.

United States District Court
W. D. Pennsylvania.

June 30, 1964.

Seymour Sikov, Pittsburgh, Pa., for plaintiff.

William J. Lancaster, Pittsburgh, Pa., for defendants.

ROSENBERG, District Judge.

The defendants, Wenham Transportation, Inc. and Billy Dean Bell, have filed a motion for a new trial after a jury awarded a verdict of $21,000 in favor of the plaintiff and against these two defendants.

The plaintiff, Charles E. Stemler, brought this action against these defendants and Robert L. Cook for personal injuries arising out of an automobile accident. At the pre-trial conference on February 5, 1963, the late Judge John W. McIlvaine dismissed the complaint against Robert L. Cook with the consent of counsel for the plaintiff.

On April 18, 1962, the plaintiff Charles E. Stemler was driving a passenger automobile in a westerly direction along Route 30 in and near its intersection with Clyde Avenue in North Versailles Township, Allegheny County, Pennsylvania. At the intersection he stopped in obedience to a traffic signal light.

The defendant, Wenham Transportation, Inc., was the lessee of a tractor and trailer combination which was then being operated by Robert L. Cook for Wenham Transportation, Inc. This unit was also on State Highway Route 30 and immediately followed the plaintiff's passenger car. But when the plaintiff's passenger car stopped, the operator of the tractor-trailer continued on and collided with the rear of the plaintiff's car. As the result of this, the plaintiff suffered spine, shoulder, neck and chest injuries which incapacitated him from working and resulted in future physical incapacity of the plaintiff.

During the trial, an urgent injunctive hearing forced the Court to interrupt and continue the trial of this case for a period of three days following a normal weekend recess.

The defendants' motion for a new trial is based upon the grounds (a) that the three-day adjournment beyond the normal weekend recess was prejudicial to the defendants; (b) that certain evidence was erroneously admitted which referred to the permanency of the plaintiff's injuries, contrary and beyond pre-trial disclosure, to the prejudice of the defendants; (c) that counsel for the plaintiff made improper and prejudicial remarks concerning the defendants in his closing argument to the jury; (d) that the accumulation of these prejudicial incidents constituted reversible error in the trial of this case; and (e) that the jury's verdict was excessive.

It is true that during the course of this trial an unforeseen emergency did occur which required the trial judge to continue and interrupt the instant case. The interruption occurred near the close of the plaintiff's case and after the direct examination of the plaintiff's medical witness, Dr. Primas. The trial resumed with the cross examination of Dr. Primas. Eventually, defendants introduced their side of the case. Prior to releasing the jury, however, the Court clearly and fully instructed the jury not to discuss

the case with anyone. Upon resumption of the trial, the jury was questioned and its members assured the Court that its instructions had been obeyed.

■ Upon review of these circumstances, I must conclude that although the delay was regretable, it certainly was not prejudicial to the defendants. It would certainly appear that the advantage, if any there was, would be with the defendants. The impact of the plaintiff's case might have been cushioned by a six-day delay during which the jury's recollection might have been softened on the details of the plaintiff's case, but that should have redounded to the defendants' advantage, while at the same time the delay afforded the defendants an opportunity to prepare for the cross-examination of the plaintiff's key witness and for their own further defense. However, as trial judge I had full occasion to observe the possibility of diminution or dilution of evidence for the jury, and am convinced that there was none caused by the interruption and any such delay was not prejudicial. I must conclude that the delay had no untoward effect.

Secondly, the defendants contend that the Court admitted certain medical testimony not divulged by the medical report. The plaintiff's pre-trial narrative statement does not in precise graphic language delineate and attribute to the plaintiff permanent disability as such. In the plaintiff's pre-trial statement this is stated on page 3:

"In addition to the foregoing claim for past medical expenses, there is a claim for future medical expenses inasmuch as the plaintiff is still under the care and observation of the attending physician.

"There is also a claim for damages for pain, suffering and inconvenience for the past, present and future."

In the complaint, paragraph 17 to 20 inclusive refer to past and future expenditures as a result of the plaintiff's injuries, but the next three paragraphs refer to his occupation and earning power in these words:

"21. As a result of said injuries, plaintiff has been or may be compelled to abstain from carrying on his ordinary occupation.

"22. As a result of said injuries, plaintiff's earning power has been and will be greatly reduced, diminished and lessened.

"23. As a result of said injuries, plaintiff's earnings have been or may be greatly reduced, diminished and lessened."

The question of pre-trial disclosure first arose after an urgent recess was required to hear an injuncitve proceeding for a period of three days after the weekend recess. The plaintiff's doctor had completed his testimony and had related, without any objection on the part of the defendants, that the plaintiff had suffered such injury as would continue permanently in the future, and that he would be prevented from performing such activities as would require certain head motions, the use of the cervical muscles, and possibly the shoulder muscles as connected with the cervical spine. Further, that because of this disabling physical condition, the lifting muscles were limited to a degree of efficiency and he would not be able to lift weights as he had previously done. And because of this condition that at least twenty to twenty-five percent of his efficiency was pretty well gone. As I say, there was no objection to any of these questions during the time of direct examination. When the case resumed after the recess and was next in order for the cross-examination of Dr. Primas by the defendants' counsel, it was pointed out by the defense that Dr. Primas had made no mention of any permanent injury in his report attached to the plaintiff's pre-trial statement, and that there was nothing said about the partial disability to the extent of twenty to twenty-five percent. The Court denied the defendants' motion to strike.

Rule 5 (II) of our local District Court Rules deals with pre-trial procedure. It requires disclosure at pre-trial of the evidence which a party intends to use at the trial. Failure to disclose at the pre-trial stages of a case may result in exclusion of such evidence at the trial. This Rule has no application, however, to the instant case for the reasons that the defendants had sufficient notice from the general averments of the complaint, and from the general statements contained in the plaintiff's pre-trial narrative statement. In addition, at page 7 of the transcript of the pre-trial conference, plaintiff's counsel stated that his doctor would testify "that there is a residual cervical injury at the present time". This statement was not taken up or questioned at the pre-trial conference by counsel for the defendants, nor was the question of permanent disability or partial permanent disability inquired into, as the defendants' counsel had the right to do, had he desired so to do.

In examining the reports of the plaintiff's doctor and of the defendants' doctor as attached to the pre-trial narrative statements, while no out-and-out statement is made of any permanent disability, there are indications by both doctors of physical disability as of the date of their respective reports. So that the defendants were on notice that the plaintiff had not fully recovered as of the time of the doctor's last examination.

However, the defendants complain that because the plaintiff's doctor did not specifically state in his pre-trial report that there was future permanent disability, his testimony to that effect should have been stricken after it was presented to the jury.

From the pre-trial record it will be seen that the plaintiff had not fully recovered from his injuries. The defendants had abundant opportunity to investigate and examine the plaintiff and to evaluate the extent of his injuries even up to the time of trial. They availed themselves of none of these opportunities.

Because they could have, under the circumstances of this case, anticipated that the plaintiff's doctor would say that recovery would be extended into the future, or perhaps permanently, they could not wait until after the testimony was given and move that it be stricken. To permit this, would amount to defeat or partial defeat of a just claim, by tactical maneuvering.

The presentation of the evidence to a jury should not be in the manner of a game of skill, but rather by a liberal interpretation of the rules of civil procedure for the purpose of divulging the truth in any given case. Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957).

Dr. Primas's testimony came to the jury in a spontaneous manner and the jury had a right to accept this testimony and evaluate it as to its worth. The defendants had their opportunities to clear that testimony before it was so presented. Its move was too late when made as a motion to strike and the denial of that motion was not prejudicial to any rights which the defendants had had and could have exercised.

The defendants' third contention is that counsel for the plaintiff made improper and prejudicial remarks regarding the defendants' conduct in closing arguments to the jury. Counsel for the plaintiff opened his argument by classifying himself as a "thirteenth juror" and directed the attack on the defendants' failure to admit liability until the close of the plaintiff's case.

By questioning the good intentions of the defendants in resorting to an admission of liability only after they forced the plaintiff to call certain witnesses, the defendants claim such comments by the plaintiff's counsel prejudiced them before the jury. In the light of the defendants' contentions, it would appear that such remarks were improper because they lend inference that counsel for the defendants had perpetrated a

wrong upon the plaintiff. I am unable to place that significance on these remarks, or that the jury was so misled as to be unable to properly evaluate the facts of the case. The parties were represented by able and competent attorneys who presented their respective positions strongly for the greater benefits of each side. The jury realized that both counsel were parrying their best points. Reviewing the record as a whole, I cannot find that the defendants were prejudiced by these remarks of plaintiff's counsel.

The defendants further contend that plaintiff's counsel improperly directed certain other remarks against the defendants when, before the jury, he admonished the defendants for their failure to call the plaintiff's employer and other rebuttal witnesses. The defendants contend that plaintiff's counsel sought to incite and arouse the jury against the defendants by implication that the defendants were obligated to produce certain witnesses.

█ In spite of the fact that the defendants admitted liability, the Court instructed the jury on the burden of proof which the plaintiff was required to meet in order to sustain a verdict. This instruction was given the jury, as if there had not been an admission of liability by the defendants. It explained negligence and proximate cause. It detailed the legal relationship of these as they further related to damages. Within the framework of these instructions, the jury could adequately and intelligently arrive at a just verdict upon the substantial evidence before it. I do not believe that the jury was misled or misguided by the remarks of plaintiff's counsel.

█ █ For all of these reasons also, the defendants' further contention that the cumulation of all of counsel's remarks constituted reversable error is without merit. There is no merit either to the defendants' contention that the plaintiff's counsel made improper remarks about

the dollar value of impairment of earning capacity. There is no indication that the jury arrived at its verdict solely or substantially upon a mathematical calculation taken from lost earnings in the past.

█ The defendants' final contention that the verdict was excessive fails because the amount of the verdict in this case is supported by substantial evidence. The amount of the plaintiff's out-of-pocket[6] expenses and medical bills of themselves cannot indicate the reasonableness of a verdict. As stated in Bochar v. J. B. Martin Motors, Inc., 374 Pa. 240, 244, 97 A.2d 813, 815 (1953):

"It is not the status of the immediate present which determines capacity for remunerative employment. Where permanent injury is involved, then the whole span of life must be considered. Has the economic horizon of the disabled person been shortened because the injury sustained as a result of the tort feasor's negligence? That is the test. And it is no answer to that test to say that there are just as many dollars in the patient's pay envelope now as prior to his accident. The normal status of a healthy person is to progress, and to the extent that his progress has been curtailed, he has suffered a loss which is properly computable in damages."

█ In addition to the potential loss of earnings, the jury was entitled to award the plaintiff, as it saw fit, reimbursement of *items for damages as medical expenses, present and future, and pain and suffering. The amount of the verdict awarded by the jury cannot be substituted by the trial judge's personal valuation of the loss sustained. This was the function of the jury here and it should not be disturbed. Levin v. Trans World Airlines, 201 F.Supp. 791 (D.C.1962).*

For all of these reasons, the defendants' motion for a new trial will be denied.